# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED

FEB 28 2018

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No. **18MJ0957**
)
White iPhone )
IMEI 35855061462525 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Attachment A-2, incorporated fully herein.

located in the ____Southern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:

Attachment B, incorporated fully herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21 USC 841(a)(1), 846 | Distribution of Controlled Substances and Conspiracy |
| Title 18 USC 922(g)(1) | Felon in Possession |

The application is based on these facts:

See attached affidavit, incorporated fully herein.

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Ava Moran, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/27/18

_____
Judge's signature

City and state: San Diego, CA      Mitchell D. Dembin, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION

I, Ava A Moran, being duly sworn, declare and state:

## TRAINING AND EXPERTISE

1. I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2. I am a Special Agent of the Federal Bureau of Investigation ("FBI"), and have been so employed since August 2014. I am currently assigned to the San Diego Field Division, North County Regional Gang Task Force ("NCRGTF"). Prior to joining the FBI, I was a United States Marine Corps Intelligence Officer serving on active duty from August 2009 until September 2013. I have received 21 weeks of training at the FBI Academy in Quantico, Virginia. During that training, I received instruction regarding a wide variety of investigative techniques that are commonly used in support of a wide range of the FBI's investigative priorities. The training included instruction regarding the use of sources, electronic surveillance techniques, law enforcement tactics, search and seizure laws and techniques, surveillance, forensic techniques, interviewing, and a variety of other subjects.

3. During my law enforcement career, I have received formal training in narcotics and gang investigations. I have participated in multiple separate investigations involving the distribution of controlled substances and firearms. As part of these investigations, I have used various investigative techniques, including physical and stationary surveillance, informants and cooperating sources, court authorized interceptions, pen register/trap and trace devices, telephone toll analysis, undercover operations, physical searches, mail covers, and electronic examinations of evidence. In addition to my formal training, I have received on the job training in the manner in which narcotics are packaged, consumed, transported and sold. I have spoken to narcotics officers, drug users, drug dealers, and informants regarding the manner in which narcotics transactions are commonly carried out, how narcotics are packaged for sale, and how drug dealers store, conceal, sell, smuggle, and

transport narcotics. Through previous investigations, I have obtained knowledge regarding the ordinary meaning of controlled substance slang and jargon. I have monitored and reviewed hundreds of recorded telephone calls and text messages pursuant to Title III court orders in narcotics and gang-related investigations, as well as handled confidential sources with access to drug dealers and gang members.

4. Based on my training and experience, I am familiar with how drug traffickers and gang members communicate and operate. For example, I am aware that drug traffickers and gang members frequently discuss criminal activity using cellular telephones and often use coded language to obscure these conversations. I also know that drug traffickers and gang members change phones as a means to evade detection by law enforcement. Moreover, I know that drug traffickers and gang members obtain phones from third parties and or subscribe to them in fictitious names in order to mask the true identity of the individuals using the phones. I am also aware of how drug traffickers and gang members organize and operate their illegal activities, including the use of locations, vehicles, and other resources, in the furtherance of their criminal activities. I am familiar with the typical make up and operation of gangs and drug trafficking organizations, including the distribution, storage, and transportation of the drugs, the collection of money which represents the proceeds of drug trafficking and other criminal activity, and money laundering.

5. The following is based my own investigation, oral and written reports by other law enforcement officers, physical surveillances, interviews, database and public records checks, searches, telephone toll analysis, and other investigation. Since this affidavit is for a limited purpose, I have not included every fact I know about this investigation. I set forth only facts necessary to establish foundation for the requested order. Conversations and discussions below are set forth in substance unless noted. I have included in parentheses or in brackets my explanations of coded or veiled speech, based on my training and experience, as well as my familiarity with the facts of this investigation. Dates and times are approximate.

//

2

**REQUESTED SEARCH WARRANT**

6. I submit that the facts contained herein demonstrate probable cause to believe that the fruits, instrumentalities and evidence of violations of Title 21, United States Code, Sections 841(a)(1) and 846 (Conspiracy to Distribute Controlled Substances), Title 21, United States Code, Sections 841(a)(1) (Distribution of Controlled Substances), Title 18, United States Code, Section 922(g)(1) (Felon in Possession of Ammunition and Firearm), will be found in the below listed items to be searched as more fully described in Attachment A-1 and Attachment A-2, incorporated herein:

    a. Black LG cellular telephone with a broken screen and round copper fixture attached to the back of the phone case, bearing serial number ZNFL63BL (**Target Telephone 1**); and,

    b. White iPhone, bearing IMEI 35855061462525 (**Target Telephone 2**);

(collectively referred to as "**Target Telephones**"). The **Target Telephones** were seized on February 9, 2018, by the FBI during the execution of a federal search warrant at 2715 Emerald Drive, Oceanside, CA. The **Target Telephones** are currently in FBI custody. The evidence to be seized from the **Target Telephone**, as violations of Title 21, United States Code, Sections 841(a)(1) and 846 (Conspiracy to Distribute Controlled Substances); Title 21, United States Code, Sections 841(a)(1) (Distribution of Controlled Substances); and Title 18, United States Code, Section 922(g)(1) (Felon in Possession), is more fully described in Attachment B, incorporated herein.

**FACTS ESTABLISHING PROBABLE CAUSE**

**Background of the Investigation**

7. Since the fall of 2016, NCRGTF has been investigating the Varrio Posole Locos (VPLS), Varrio Carlsbad Locos (VCLS), Varrio Mesa Locos (VMLS), and other gang members and associates involved in drug trafficking activities throughout San Diego County, as well as their affiliation with the Mexican Mafia. VPLS has been active in Oceanside since the early 1960s. Currently, there are approximately 163 documented VPLS gang members. VPLS claims a neighborhood in Oceanside that is bordered by Interstate 5 to the west,

3

Mission Avenue to the south, and Canyon Drive to the east. VCLS has been active in Carlsbad since the early 1970s. Currently, VCLS has approximately 78 documented VCLS members. VCLS claims a neighborhood in Carlsbad that is bordered by Interstate 5 to the east, Santa Fe Railroad Tracks to the West, Carlsbad Village Drive to the North, and Tamarack Avenue to the South. VMLS has been active in Oceanside since the 1970s. Currently, VMLS has approximately 59 documented members. The VMLS street gang claims as turf or territory the area of Oceanside known as the Mesa Margarita/Libby Lake Neighborhood. This area is located to the south of Libby Lake Park and to the north of North River Road. The territory is bordered to the west by Calle Montecito and to the east by Calle Vallecito. VPLS, VCLS, and VMLS gang members and associates are involved in a variety of criminal activity, including drug distribution, firearms trafficking, robberies, vehicle thefts, burglaries, assaults, and homicide. Additionally, VPLS, VCLS, and VMLS gang members and associates have had historic ties to the Mexican Mafia.

8. The investigation was initiated in September 2016 after two documented VPLS members were murdered in VPLS territory. The first homicide was a robbery gone awry and the second was committed by members of a rival gang known as the Center Street Locos (CST). VPLS members conducted a retaliatory shooting against CST, which resulted in serious bodily injury of a bystander. Anticipating additional violence, members of NCRGTF began tasking their respective confidential sources (CS) to obtain information on VPLS and their illegal activities. The investigation has focused mainly on the methamphetamine and heroin distribution activities of VPLS, VCLS, and other gang members in North County. Investigators have utilized court-authorized wiretaps of seven target telephones as well as traditional investigative techniques, such as surveillance, pen/trap orders, phone and vehicle tracker warrants, and residential search warrants to advance the investigation.

**GOMEZ and the Target Telephones**

9. Adrian GOMEZ, aka "Bandit," was initially identified to investigators in the spring of 2017, as an ounce to pound quantity methamphetamine dealer. GOMEZ is a VCLS member and has several felony convictions, including burglary (1993), felon in possession

4

(2002 and 2003), possession of a controlled substance (2003, 2004, 2006, 2008), conspiracy to commit a street gang act (2010), and possession of a controlled substance for sale (2012). In August 2017, investigators obtained authorization to intercept wire and electronic communications on GOMEZ's telephone (TT5). However, GOMEZ dropped the telephone before any communications were intercepted.

10. On February 9, 2018, a federal search warrant was executed at GOMEZ's residence located at 2715 Emerald Drive, Oceanside, CA 92056 (18MC0498). Leading up to the search warrant, investigators had conducted surveillance at the residence and used a pole camera, through which they observed significant foot traffic consistent with narcotics sales. Investigators had also interviewed individuals who had recently purchased narcotics from GOMEZ. For example, on July 25, 2017, investigators observed a silver minivan depart from the residence. During a traffic stop of the silver minivan by the San Diego Sheriff's Department, deputies located drug paraphernalia on one of the occupants of the vehicle. Similarly, on October 19, 2017, Oceanside Police Department officers observed an unnamed individual [UI], who was known to the surveilling officers as a narcotics user with several drug-related felony convictions, exit the residence and enter a vehicle. The surveilling officers conducted a traffic stop of the vehicle in Oceanside, during which the UI admitted that he/she had just purchased about one gram of methamphetamine from "Bandit" [GOMEZ] at the residence. The UI also stated that he/she has known GOMEZ for a long time and that GOMEZ always had methamphetamine to sell. Finally, on January 9, 2018, law enforcement officers interviewed an associate of GOMEZ's. The associate stated that he/she had purchased methamphetamine from GOMEZ in late December 2017.

11. During the execution of the search warrant on February 9, 2018, investigators found five occupants in the residence, including GOMEZ. The four other occupants were identified as GOMEZ's uncle, GOMEZ's grandparents, and GOMEZ's half-sister. Investigators conducted interviews with the occupants of the residence, during which the uncle stated the residence belonged to him. The uncle and half-sister identified GOMEZ's bedroom for investigators. In GOMEZ's bedroom, investigators located a Kassnar PSP-25 .25

caliber handgun, serial number VA02037, in a dresser drawer. Collocated with the firearm was a magazine containing six Speer .25 caliber rounds.

 

12. Investigators also located several dominion and control documents in the bedroom. For example, the drawer containing the firearm and ammunition also contained a leather wallet containing a State of California Benefits Identification Card bearing GOMEZ's name. Inside the bedroom, investigators also found a framed photo of GOMEZ and his half-sister, employment and financial documents bearing GOMEZ's name, and various paraphernalia bearing GOMEZ's alias, "Bandit." Finally, investigators found and seized the **Target Telephones**, which were both located in GOMEZ's bedroom.

13. Both **Target Telephones** appear to be operational. **Target Telephone 2**, which was found underneath a pile of items in GOMEZ's bedroom, was receiving an incoming call from another known VCLS gang member at the time that investigators recovered it.

14. Following the seizure of the handgun and ammunition, GOMEZ was Mirandized and agreed to speak to investigators. During the recorded interview, GOMEZ told investigators that he did not reside at the house and that all the items contained in the bedroom where investigators located the firearm and ammunition belonged to his deceased brother (GOMEZ's brother had recently been killed in an officer-involved shooting). GOMEZ was arrested and booked into the Vista Detention Facility on state charges. GOMEZ has pled not guilty and is out on bail. While GOMEZ was in state custody pending charges, investigators listened to a jail call between GOMEZ and his half-sister. In that call, GOMEZ told his half-sister in Spanish the following, roughly translated to English: "I need you to

bail me out fast, because they've already taken my fingerprints." Based on this statement, it is believed a fingerprint analysis of the firearm will likely return positive results for GOMEZ's fingerprints.

15. Based on my training and experience, I know that drug dealers often carry firearms with them during drug transactions as protection. I also know that drug dealers utilize cellular telephones to arrange and discuss meet locations, prices, and quantities. Based on my investigation of GOMEZ to date, I believe the narcotics transactions described above and the incoming phone call from a known VCLS gang member during the execution of the search warrant, demonstrate probable cause to believe that GOMEZ used the **Target Telephones** to engage in narcotics transactions or otherwise further a narcotics distribution conspiracy. Therefore, I believe that evidence of GOMEZ's narcotics distribution activities will be found on the **Target Telephones**.

### BASIS FOR EVIDENCE SOUGHT IN SEARCH WARRANT

16. Based upon my experience and training, consultation with other law enforcement officers experienced in drug and financial investigations, and all facts and opinions set forth in this affidavit, I know that:

a. Individuals involved in drug distribution use cellular telephones and electronic communication devices to conduct their criminal activities. An examination of the above-referenced items to be searched will enable investigators to establish further evidence of the drug distribution conspiracy. Cellular telephones and electronic communication devices are capable of storing many different types of data that are invaluable to investigators and could be evidence of criminal conduct. This data, sought pursuant to the requested search warrants, consists of the contents of the cell phone or electronic communication device's memory, including: Stored names and telephone numbers in the memory, "phonebook" or list of contacts, and/or speed dial functions of the phones; phone numbers dialed for the most recent outgoing or "sent" calls of the telephones, along with date and time of call data; phone numbers dialing the telephones for the most recent incoming "received" calls, along with date and time of the call data; phone numbers dialing the

telephones for the most recent "missed" calls, along with date and time of call data; GPS navigation information; internet searches and websites viewed; and deleted data.

   b. Drug traffickers commonly use cellular telephones, blackberries, PDAs, electronic communication devices, other personal handheld electronic devices, and laptop and desktop computers to communicate with, among others, their customers, their suppliers, and other criminal associates and to store phone numbers, text messages, emails, photographs, physical and email addresses, and other information that constitutes evidence of their drug trafficking activities. Drug traffickers also commonly store records of the business of distributing and selling drugs, on cellular phones, computers and computer discs, diskettes, cassettes, tapes, and other forms of digital media. Drug traffickers commonly maintain these items on their person and/or in their residences and vehicles.

   c. In addition to their use of computers and digital media, persons involved in narcotics trafficking, often use mobile phones in furtherance of these activities. When used in this manner, the mobile phones typically contain data constituting evidence of these activities. Many current mobile phones are sophisticated computing devices and are capable of performing many of the same functions as computers. They are commonly used in furtherance of illicit activity in the same manner as computers, as detailed above.

## **SEARCH PROTOCOL FOR CELLULAR TELEPHONES AND ELECTRONIC COMMUNICATION DEVICES**

  17. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure

environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

18. Following the issuance of this warrant, I will collect the **Target Telephones** and subject them to analysis. All forensic analysis of the data contained within the **Target Telephones** and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

19. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

20. Based upon my experience and training, consultation with other law enforcement officers experienced in drug investigations, and all the facts and opinions set forth in this affidavit, I believe that probable cause exists to conclude that the item set forth in Attachment A (incorporated herein by reference), was utilized to facilitate the offense of drug distribution. Furthermore, I believe there is probable cause to believe he **Target Telephones** contain stored data that constitutes evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) and 846 (Conspiracy to

9

1  Distribute Controlled Substances), Title 21, United States Code, Sections 841(a)(1)
2  (Distribution of Controlled Substances), and Title 18, United States Code, Section 922(g)(1)
3  (Felon in Possession of Ammunition and Firearm).

4      21.    Therefore, I respectfully request warrants be issued authorizing a search of the
5  items described in Attachment A (incorporated herein) and the seizure of items listed in
6  Attachment B (incorporated herein), using the methodology described above.

7      22.    I swear the foregoing is true and correct to the best of my knowledge and belief.

Ava Moran, Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this 27 day of February 2018.

The Honorable Mitchell D. Dembin
United States Magistrate Judge

10

## **ATTACHMENT A-2**

### PROPERTY TO BE SEARCHED

The property to be searched in connection with an investigation of violations of Title 21, United States Code, Sections 841(a)(1) and 846 (Conspiracy to Distribute Controlled Substances); Title 21, United States Code, Sections 841(a)(1) (Distribution of Controlled Substances), Title 18, United States Code, Section 922(g)(1) (Felon in Possession of Ammunition and Firearm), is described below:

White iPhone bearing IMEI 35855061462525 (**Target Telephone 2**)

Currently in the possession of the San Diego Federal Bureau of Investigation.

## **ATTACHMENT B**

### ITEMS TO BE SEIZED

Authorization to search **Target Telephone 1** and **Target Telephone 2 (Target Telephones)** described in Attachment A-1 and Attachment A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the **Target Telephones**. The seizure and search of the **Target Telephones** will be conducted in accordance with the protocol delineated in the affidavit submitted in support of the warrants.

The evidence to be seized from the **Target Telephones** will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period of <u>August 1, 2017 to and including February 27, 2018</u>:

    a. tending to identify attempts to distribute or possess with the intent to distribute methamphetamine or other controlled substances;

    b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the distribution or possession with intent to distribute methamphetamine or other controlled substances;

    c. tending to identify co-conspirators, criminal associates, or others involved in the distribution or possession with the intent to distribute methamphetamine or other controlled substances;

    d. tending to identify travel to or presence at locations involved in the distribution or possession with intent to distribute methamphetamine or other controlled substances, such as meet locations, stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the **Target Telephones**; and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**which are evidence of violations of Title 21, United States Code, Sections 841(a)(1) and 846, and Title 18, United States Code, Section 922(g)(1).**